IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

STATE AUTO PROPERTY AND CASUALTY    *
COMPANY,
                                    *
        Plaintiff,
                                    *           CASE NO. 4:08-CV-98(CDL)
vs.
                                    *
SHERRY MATTY, individually and
as surviving spouse of Matthew      *
Scott Matty, deceased, JEFFREY
MICHAEL DAVIS, FRANK GRIFFIN,       *
KAREN GRIFFIN, RACHEL GRIFFIN,
RONALD E. MATTY, Executor of the    *
estate of Matthew Scott Matty,
deceased,                           *

        Defendants.                 *

_____     *

<u>O R D E R</u>

This declaratory judgment action arises from a motor vehicle collision in which Rachel Griffin's Ford Explorer struck Matthew Scott Matty and Jeffrey Davis within close spatial and temporal proximity to each other while they were riding their bicycles. The vehicle driven by Griffin at the time of the collision was covered by an insurance policy issued by State Auto Property and Casualty Company ("State Auto" or "Plaintiff"). State Auto contends that the incident in which Griffin struck both Matty and Davis constitutes one "accident" under the terms of the applicable policy, and thus State Auto seeks a declaratory judgment that the total amount of liability insurance available for the claims brought on behalf of Matty and Davis is the single liability limit under the applicable policy.

1

Defendants argue that there were two separate and distinct collisions, and thus there were two accidents for purposes of available liability insurance coverage. Therefore, they seek a declaration that the single limit available under the policy per accident is available separately to cover Matty and Davis's separate claims. Plaintiff and Defendants Matty and Davis have each filed separate Motions for Summary Judgment (Docs. 28, 41, & 48). Because this case presents a question of Georgia insurance contract law that is one of first impression under Georgia law, the Court finds it appropriate for certification to the Supreme Court of Georgia pursuant to O.C.G.A. § 15-2-9[1] and Supreme Court of Georgia Rules 46 and 47. Before stating the question to be certified, the Court will describe the facts and discuss the issues relevant to the certified question.

---

[1] O.C.G.A. § 15-2-9(a) provides:

The Supreme Court of this state, by rule of court, may provide that when it shall appear to the Supreme Court of the United States, to any circuit court of appeals or district court of the United States, or to the Court of Appeals or the District Court of the District of Columbia that there are involved in any proceeding before it questions of the laws of this state which are determinative of the case and there are no clear controlling precedents in the decisions of the Supreme Court of this state, such federal court may certify the questions of the laws of this state to the Supreme Court of this state for answers to the questions of state law, which certificate the Supreme Court of this state may answer by written opinion.

FACTUAL BACKGROUND

## I.   The Two Different Impacts

On February 3, 2008, Griffin's motor vehicle struck a bicycle operated by Matty while both were traveling westbound on Georgia Route 315 in Harris County, Georgia.  Matty's body hit the windshield and went over the top of Griffin's motor vehicle.  Matty died as a result of the impact.  At the time of impact with Matty's bicycle, Griffin's motor vehicle was partly off of the roadway with the passenger side tires on the shoulder.  (Wicker Dep. 20:2-24, Mar. 10, 2009.)[2]  After the impact with Matty's bicycle, Griffin "was able to bring her vehicle back on to the roadway . . . .  Whether she was consciously trying to avoid Davis, [Sgt. Wicker] [did not] know.  Whether she tried braking, [Sgt. Wicker] [did not] know.  There was no evidence of any kind of braking, but she did make  . . . a correction to get back on to the roadway."[3]  (Wicker Dep. 34:19-35:1.)  After Griffin made this "correction to get back on to the roadway," Griffin's motor vehicle traveled "at least 95 to, potentially, 115

---

[2]The events of February 3, 2008 were investigated by Sgt. James Wicker with the Georgia State Patrol Specialized Collision Reconstruction Team.  The parties have stipulated to Sgt. Wicker's qualifications as an expert in the field of vehicle collision reconstruction.  (Wicker Dep. 10:5-10.)

[3]This deposition testimony was in direct response to Plaintiff's question regarding whether Sgt. Wicker "[had] an opinion as . . . to whether Rachel Griffin ever regained control of her vehicle between the first and second impacts."  (Wicker Dep. 33:24-34:2, 33:14-35:1.)

feet," and struck the bicycle operated by Davis. (Wicker Dep. 18:13-19:9.) As a result of the impact, Davis was seriously injured.[4]

Sgt. Wicker testified that there were "two different [impacts]" and that these impacts were separated by at least "95 feet, to potentially, 115 feet." (Wicker Dep. 18:13-19:9.) Sgt. Wicker further testified that the speed limit on the roadway where each impact occurred was fifty-five miles an hour and that he "had no reason to think [Griffin] was traveling any faster than 55" miles an hour at the moment "when the first impact occurred." (Wicker Dep. 32:5-12.) In addition, Sgt. Wicker testified that, assuming that Griffin's vehicle was traveling the speed limit of fifty-five miles per hour at a *constant* rate, and assuming further that the distance between the first impact and the second impact was between 95 and 115 feet, the time between the first and second impacts was "just over a second." (Wicker Dep. 32:13-33:13.)

Griffin "[did] not recall seeing the curve on [Georgia Route] 315 or seeing anyone on a bicycle," but she did recall "hearing and seeing a person on [her] windshield." (Griffin Aff. ¶¶ 2 & 3, Dec. 10, 2008 [hereinafter Griffin Aff. I].) In addition, Griffin "[did] not recall whether [she] did, or did not, have control of [her] vehicle after impact with Matty's bicycle and before the impact with Davis's bicycle." (Griffin Aff. ¶ 2, May 19, 2009 [hereinafter Griffin Aff. II].) Sgt. Wicker testified that "based on what Griffin

---

[4]Davis had "no recollection of [Griffin's] Ford Explorer striking [his] bicycle." (Davis Dep. 46:23-25, Dec. 11, 2008.)

had told [him], she apparently had blacked out" and "[did] not know why she hit th[e] bicycles." (Wicker Dep. 13:2-7.)  Sgt. Wicker further testified that Griffin told him that "she [did not] remember anything about the . . . time of the collision." (*Id.* at 13:8-9.)

## II.  **The Pertinent Policy Language**

The applicable liability insurance policy in this case is State Auto Policy No. AGA 5041615 (the "Policy"). (Attach. to Benson Aff., Certified Copy of State Auto Policy No. AGA 5041615 [hereinafter Policy].)  The Declarations page of the Policy provides "COVERAGE" for "LIABILITY-BODILY INJURY & PROPERTY DAMAGE" with "LIMITS OF LIABILITY" of "$100,000 EACH ACCIDENT." (Policy at 2.)  The Policy also provides, in part, that

> [t]he limit of liability shown in the Schedule or in the Declarations for Liability Coverage is [State Auto's] maximum limit of liability for all damages resulting from any one auto accident.  This is the most [State Auto] will pay regardless of the number of:
>  1.  'Insureds';
>  2.  Claims made;
>  3.  Vehicles or premiums shown in the Declarations; or
>  4.  Vehicles involved in the auto accident.

(*Id.* at 23.)  The Policy does not define "accident," "each accident," "any one accident," or "the auto accident." (Ex. A to Defs.' Statement of Material Facts to Which There is No Genuine Issue to be Tried [hereinafter Defs.' SOF] ¶¶ 1-4.)[5]

---

[5]Defendants Matty and Davis filed identical Statements of Material Facts to Which There is No Genuine Issue to be Tried.

5

### III. The Demand Letters

The representatives of Matty demanded payment from State Auto of the $100,000 single limit liability for Matty's wrongful death as a result of the collision with Griffin's motor vehicle. The representatives of Davis also demanded payment from State Auto of the $100,000 single limit liability for Davis's injuries sustained in the collision with Griffin's motor vehicle. (Exs. B, C, & G to Defs.' SOF.)

The Griffins, who are insureds under the State Auto Policy, demanded that State Auto pay the demands made by *both* the representatives of Matty *and* the representatives of Davis, stating that "it [was] clear that there were two accidents, and thus, the Griffins should be covered by two $100,000 limits, as set forth in the [P]olicy." (Ex. D to Defs.' SOF.) In response to the Griffins' demand, State Auto maintained that it was "unsure whether [the Griffins'] interpretation of [State Auto's] [P]olicy as it relate[d] to this accident [was] correct." (Ex. F to Defs.' SOF.) According to State Auto, the policy could reasonably be construed to provide only the single limit of coverage because only one accident occurred, although that accident gave rise to separate and distinct injuries and claims.

DISCUSSION

**I.    General Rules Regarding Construction of an Insurance Policy Under Georgia Law**

Under Georgia law, "'[t]he construction of a contract is a matter of law for the court.'"[6] *Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 334, 380 S.E.2d 686, 687 (1989) (quoting O.C.G.A. § 13-2-1).  In construing an insurance contract, the Court "must consider it as a whole, give effect to each provision, and interpret each provision to harmonize with each other." *S. Trust Ins. Co. v. Dr. T's Nature Prods. Co.*, 261 Ga. App. 806, 807, 584 S.E.2d 34, 35-36 (2003).  In Georgia,

> [t]he construction of contracts involves three steps.  At least initially, construction is a matter of law for the court.  First, the trial court must decide whether the language is clear and unambiguous.  If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning.  Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity.  Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*Simpson v. Infinity Select Ins. Co.*, 269 Ga. App. 679, 681, 605 S.E.2d 39, 41-42 (2004) (alteration in original) (internal quotation marks omitted).  In applying the rules of construction to an insurance policy, "the test is not what the insurer intended its

---

[6]The law of Georgia governs interpretation of the Policy at issue in this action, which is before this Court based upon diversity jurisdiction. *SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1214 (11th Cir. 1999).

words to mean, but rather what a reasonable person in the insured's position would understand them to mean." *Gulf Ins. Co. v. Mathis*, 183 Ga. App. 323, 324, 358 S.E.2d 850, 851 (1987). "Georgia courts have long acknowledged that insurance policies are prepared and proposed by insurers. Thus, if an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured." *Claussen*, 259 Ga. at 334-35, 380 S.E.2d at 688.

## II.  The Meaning of "Accident" Under the Policy

In this case, the Policy provides for limits of liability of "$100,000 EACH ACCIDENT." (Policy at 2.) However, the Policy does not define "accident," "each accident," "any one auto accident," or "the auto accident." (Ex. A to Defs.' SOF ¶¶ 1-4.) The Georgia Supreme Court has not addressed the meaning of "accident" in the context of the facts of this case. The issue, however, has been addressed by other jurisdictions in different ways. There are three general analytical approaches to determine whether an event is a single "accident" under a liability policy. These approaches are: (1) the causation theory, (2) the effect theory, and the (3) liability triggering event theory. *See* Michael P. Sullivan, Annotation, *What Constitutes Single Accident or Occurrence Within Liability Policy Limiting Insurer's Liability to a Specified Amount Per Accident or Occurrence*, 64 A.L.R.4th 668, §§ 2(a), 2(b), 3, 4, & 5 (1988).

8

The majority of jurisdictions employ the causation theory to determine whether more than one "accident" has taken place for purposes of liability insurance.  Under the causation theory, the determination of whether there was one "accident" is whether there was one negligent act or omission that was the sole proximate cause of all the resultant damages.  *See, e.g., Ill. Nat'l Ins. Co. v. Szczepkowicz*, 542 N.E.2d 90, 92 (Ill. App. Ct. 1989) (finding that "the number of occurrences is determined by referring to the cause or causes of the damage rather than to the number of individual claims or injuries"); *Kan. Fire & Cas. Co. v. Koelling*, 729 S.W.2d 251, 252 (Mo. Ct. App. 1987) (noting that under the causation theory, "an insured's single act is considered the accident from which all claims flow"); *State Farm Fire & Cas. Co. v. Kohl*, 182 Cal. Rptr. 720, 721 (Cal. Ct. App. 1982) (noting that under the causation theory, "a single *uninterrupted course of conduct* which gives rise to a number of injuries or incidents of property damage is one 'accident' or 'occurrence'").

Under the effect theory, the event is judged from the point of view of the person sustaining the injury.  *See, e.g., Anchor Cas. Co. v. McCaleb*, 178 F.2d 322, 325 (5th Cir. 1950) ("If one cause operates upon several at one time, it cannot be regarded as a single incident, but the injury to each individual is a separate accident."); *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 287 (Ill. 2006) (noting that the effect theory "determines the number of

9

accidents or occurrences by looking at the effect an event had, [i.e.], how many individual claims or injuries resulted from it"); *Am. Indem. Co. v. McQuaig*, 435 So. 2d 414, 415 n.1 (Fla. Dist. Ct. App. 1983) (noting that under the effect theory, "the 'per accident' clause in insurance policies is to be construed as referring to the result or effect of the accident on the persons injured or damaged and not as referring to the cause of the accident").

Lastly, under the liability triggering event theory, the number of "accidents" is determined by the number of events or incidents for which the insured is liable. *See, e.g., Shamblin v. Nationwide Mut. Ins. Co.*, 332 S.E.2d 639, 644 (W. Va. 1985) (recognizing that the liability triggering event theory construes "accident" in liability policies "to mean the event for which the insured becomes liable, and not some antecedent cause of the injury" (internal quotation marks omitted)); *Mid-Century Ins. Co. v. Shutt*, 845 P.2d 86, 88 (Kan. Ct. App. 1993) (noting that the jurisdictions that follow the liability triggering event theory "look at the event or events which triggered liability" to determine the number of "accidents" under a liability insurance policy).

Plaintiff acknowledges "that this specific issue–that is, the question of whether multiple impacts within the same event constitute more than one 'accident' under a single-limit insurance policy–has not been decided by Georgia's appellate courts." (Pl.'s Br. in Supp. of Mot. for Summ. J. 6.) Plaintiff relies on state law cases outside

10

of Georgia[7] in support of its contention that the collision of Griffin's motor vehicle with Matty and Davis resulted in one "accident" under the terms of the Policy.  Plaintiff also relies on *St. Paul-Mercury Indemnity Co. v. Rutland*, 225 F.2d 689 (5th Cir. 1955).  In *Rutland*, a truck hit and derailed a freight train, causing damage to sixteen rail cars owned by fourteen separate owners, as well as damaging the roadbed owned by the railway company.  *Id.* at 690.  The insurance policy at issue provided automobile property damage liability in the amount of "$5,000 each accident."  *Id.* at 691.  The court, after "find[ing] no [Georgia] cases expressly deciding the issue," applied the causation theory to the facts in the case.  *Id.* at 691, 692 ("Considering only the policy involved here without reference to previous judicial interpretations, we think it clear that the word 'accident' as used in the disputed phrase was

---

[7] *See, e.g., Olsen v. Moore*, 202 N.W.2d 236, 238-41 (Wis. 1972) (finding that there was one "accident" where insured's vehicle struck two vehicles almost simultaneously and insured never regained control over the vehicle prior to striking the second vehicle); *Truck Ins. Exch. v. Rohde*, 303 P.2d 659, 663 (Wash. 1956) (en banc) (finding that there was one "accident" rather than three when insured's vehicle went out of control and remained out of control during the three collisions); *Hartford Accident & Indem. Co. v. Wesolowski*, 305 N.E.2d 907, 910 (N.Y. 1973) (finding that there was just one "occurrence" or "accident" because the two collisions occurred but an instant apart and the continuum between the two impacts was unbroken with no intervening agent or operative factor); *Bacon v. Miller*, 273 A.2d 602, 605 (N.J. Super. Ct. App. Div. 1971) (finding that there was one "accident" when insured collided with a car and then, losing control over the vehicle, went over a curb onto a sidewalk, hitting three pedestrians); *Hyer v. Inter-Ins. Exch. of Auto. Club of S. Cal.*, 246 P. 1055, 1056-59 (Cal. Dist. Ct. App. 1926) (finding that a single "accident" occurred when an initial collision broke the steering gear of the insured vehicle, causing it to become uncontrollable and strike a second vehicle).

intended to be construed from the point of view of the cause rather than the effect."). The court concluded that the insurer's maximum liability for all property damage resulting from the accident was the $5,000 single limit liability since all property damage occurred in "[t]he single, sudden and intentional collision." *Id.* at 693.

Defendants rely almost exclusively on *Liberty Mutual Insurance Co. v. Rawls*, 404 F.2d 880 (5th Cir. 1969) (per curiam) in support of their contention that the collision of Griffin's motor vehicle with Matty and Davis resulted in two "accidents."[8] In *Rawls*, the vehicle of Clinton Bess, the insured, collided with the appellees' vehicle. Afer the first impact, Bess's vehicle continued northerly, veering across the centerline, colliding head-on with another vehicle occupied by the Davis family. *Id.* at 880. The stipulated facts revealed that "the impact between the Bess automobile and the Rawls automobile was separated from the impact between the Bess automobile and the Davis automobile by both time and distance. The[] impacts occurred 2 to 5 seconds apart and 30 to 300 feet apart." *Id.* The court, noting that "[t]here [was] no evidence that the Bess automobile went out of control after striking the rear end of appellees' automobile," found that "the only reasonable inference [was] that Bess had control of his vehicle after the initial

---

[8]It is unclear what state law the court applied in *Rawls*. Therefore, the Court cannot presume that the court applied Georgia law, especially considering the fact that the case was appealed from the Middle District of Florida. *See* Sullivan, 64 A.L.R.4th 668 at § 15(b).

collision." *Id.* The court held "upon these facts that there were, in law, two accidents." *Id.* at 881. The court opined that the same result would have been reached under either the "causation theory" or the "effect theory."[9] *Id.*

CONCLUSION

The Court finds that no clear, controlling precedent from Georgia courts addresses the legal issue in this case. Because the resolution of this issue of first impression under Georgia law is determinative of the outcome in this case, the Court certifies the following question to the Supreme Court of Georgia:

> WHETHER THE LIABILITY INSURANCE AVAILABLE FOR SEPARATE AND DISTINCT CLAIMS ARISING FROM AN INCIDENT WHERE THE INSURED STRUCK TWO CLAIMANTS SEPARATELY BUT IN CLOSE TEMPORAL AND SPATIAL PROXIMITY TO EACH OTHER IS LIMITED TO THE SINGLE PER "ACCIDENT" LIMIT IN THE POLICY WHEN "ACCIDENT" IS NOT EXPRESSLY DEFINED IN THE POLICY.

In certifying this question, the Court does not intend the particular phrasing to limit the Supreme Court of Georgia in its consideration

---

[9]Defendants contends that *Rawls* is directly on point with the facts in this case, and therefore, the Court should find that there were two "accidents" under the Policy. Specifically, Defendants contend that the two impacts in this case were separated by "both time and space"–the two impacts were between 95 and 115 feet apart and there was over a second between the impacts. In addition, Defendants contend that Wicker's testimony that Griffin made "a correction to get back on to the roadway" undisputably indicates that Griffin regained control over her motor vehicle after the first impact and before the second impact.

Plaintiff, on the other hand, contends that Sgt. Wicker's testimony–that Griffin made "a correction to get back on to the roadway"–does not undisputably indicate that Griffin regained control over her motor vehicle. Furthermore, Plaintiff contends that the testimonial evidence by Griffin–that she "[did] not recall whether [she] did, or did not, have control of [her] vehicle after impact with Matty's bicycle and before the impact with Davis's bicycle" (Griffin Aff. II. ¶ 2)–creates a genuine issue of material fact as to whether Griffin regained control after the first impact and before the second impact.

13

of the issues presented by the case.  In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted.  This case is stayed pending the Georgia Supreme Court's decision on the certified question.

     IT IS SO ORDERED, this 20th day of July, 2009.


                                        S/Clay D. Land
                                            CLAY D. LAND
                             UNITED STATES DISTRICT JUDGE