```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF GEORGIA
                        COLUMBUS DIVISION
```

| | |
|---|---|
| STATE AUTO PROPERTY AND CASUALTY COMPANY, * | |
| * | |
| Plaintiff, | |
| * | CASE NO. 4:08-CV-98 (CDL) |
| vs. | |
| * | |
| SHERRY MATTY, individually and as surviving spouse of Matthew * Scott Matty, deceased; JEFFREY MICHAEL DAVIS; FRANK GRIFFIN; * KAREN GRIFFIN; RACHEL GRIFFIN; and RONALD E. MATTY, Executor of * the estate of Matthew Scott Matty, deceased, * | |
| Defendants. * | |

O R D E R

This declaratory judgment action arises from an insurance coverage dispute involving the amount of available liability insurance. Plaintiff State Auto Property and Casualty Company ("State Auto" or "Plaintiff") insured a Ford Explorer being driven by Rachel Griffin when she struck Matthew Scott Matty and Jeffrey Davis in close spatial and temporal proximity to each other while they were riding their bicycles. State Auto contends that the incident in which Ms. Griffin struck both Mr. Matty and Mr. Davis constitutes one accident, and thus State Auto seeks a declaratory judgment that the total amount of liability insurance available for the claims brought on behalf of Mr. Matty and Mr. Davis is the single liability limit under the applicable policy. The Matty Defendants and Mr. Davis

argue that there were two separate and distinct collisions, and thus there were two accidents for purposes of available liability insurance coverage. The term "accident" was not defined in the applicable policy. Plaintiff, the Matty Defendants, and Mr. Davis each filed separate motions for summary judgment.

After the parties filed motions for summary judgment, the Court certified the following question to the Supreme Court of Georgia pursuant to O.C.G.A. § 15-2-9 and Supreme Court of Georgia Rules 46 and 47:

> WHETHER THE LIABILITY INSURANCE AVAILABLE FOR SEPARATE AND DISTINCT CLAIMS ARISING FROM AN INCIDENT WHERE THE INSURED STRUCK TWO CLAIMANTS SEPARATELY BUT IN CLOSE TEMPORAL AND SPATIAL PROXIMITY TO EACH OTHER IS LIMITED TO THE SINGLE PER "ACCIDENT" LIMIT IN THE POLICY WHEN "ACCIDENT" IS NOT EXPRESSLY DEFINED IN THE POLICY.

*State Auto Prop. & Cas. Co. v. Matty*, No. 4:08-CV-98 (CDL), 2009 WL 2216605, at *5 (M.D. Ga. July 20, 2009). After the Supreme Court of Georgia answered this Court's certified question, the Court then permitted the parties to re-file their summary judgment motions, which the parties have done (Docs. 76, 80, & 82). The Court now finds that genuine issues of material fact exist to be tried as to whether one or two accidents occurred for purposes of liability coverage. Accordingly, the motions for summary judgment are denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In determining whether a *genuine* issue of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

## I.  The Two Impacts

On February 3, 2008, Ms. Griffin's motor vehicle struck a bicycle operated by Mr. Matty while both were traveling westbound on Georgia Route 315 in Harris County, Georgia. Mr. Matty's body hit the windshield and went over the top of Ms. Griffin's motor vehicle. Mr. Matty died as a result of the impact. At the time of impact with Mr. Matty's bicycle, Ms. Griffin's motor vehicle was partly off of

the roadway with the passenger side tires on the shoulder. (Wicker Dep. 20:2-24, Mar. 10, 2009 [hereinafter 03/10/09 Wicker Dep.].)[1]

After the impact with Mr. Matty's bicycle, Ms. Griffin "was able to bring her vehicle back on to the roadway." (*Id.* at 34:19-20.) The investigating officer, Sgt. Wicker, did not know "[w]hether [Ms. Griffin] was consciously trying to avoid Mr. Davis" nor "[w]hether [Ms. Griffin] tried braking." (*Id.* at 34:21-23.) "There was no evidence of any kind of braking, but [Ms. Griffin] did make . . . a correction to get back on to the roadway." (*Id.* at 34:24-35:1.) Specifically, Sgt. Wicker testified that Ms. Griffin made a "steering input coming back onto the roadway" after the first collision. (Wicker Dep. 14:11-12, Mar. 26, 2010 [hereinafter 03/26/10 Wicker Dep.].) Sgt. Wicker further testified that "if [Ms. Griffin] did not have any kind of steering input, she would have continued off the roadway and down the embankment." (*Id.* at 14:20-22.) After Ms. Griffin made this correction to get back on to the roadway, Ms. Griffin's motor vehicle traveled "at least 95 feet to, potentially, 115 feet," and struck the bicycle operated by Mr. Davis. (03/10/09 Wicker Dep. 18:13-19:9.) As a result of the impact, Mr. Davis was seriously injured.

---

[1] The events of February 3, 2008 were investigated by Sgt. James Wicker of the Georgia State Patrol Specialized Collision Reconstruction Team. The parties have stipulated to Sgt. Wicker's qualifications as an expert in the field of vehicle collision reconstruction. (03/10/09 Wicker Dep. 10:5-10.)

4

Sgt. Wicker testified that the speed limit on the roadway where each impact occurred was fifty-five miles per hour and that he had "no reason to think [Ms. Griffin] was traveling any faster than 55" miles per hour at the moment "when the first impact occurred." (*Id.* at 32:5-12.) In addition, Sgt. Wicker testified that, assuming that Ms. Griffin's vehicle was traveling the speed limit of fifty-five miles per hour at a constant rate, and assuming further that the distance between the first impact and the second impact was between 95 and 115 feet, the time between the first and second impacts was "just over a second." (*Id.* at 32:13-33:13.)

Ms. Griffin "[did] not recall seeing the curve on [Georgia Route] 315 or seeing anyone on a bicycle," but she did recall "hearing and seeing a person on [her] windshield." (Griffin Aff. ¶¶ 2-3, Dec. 10, 2008.) In addition, Ms. Griffin "[did] not recall whether [she] did, or did not, have control of [her] vehicle after impact with Mr. Matty's bicycle and before the impact with Mr. Davis's bicycle." (Griffin Aff. ¶ 2, May 19, 2009.) Sgt. Wicker testified that "based on what Ms. Griffin had told [him], she apparently had blacked out" and "d[id] not know why she hit th[e] bicycles." (03/10/09 Wicker Dep. 13:5-7.) Sgt. Wicker further testified that Ms. Griffin told him that "she [did not] remember anything about the . . . time of the collision." (*Id.* at 13:8-9.) When asked whether Ms. Griffin's correction back onto the roadway

5

after the first impact—the steering input—was done consciously, Sgt. Wicker opined:

> I don't know exactly what state of mind [Ms. Griffin] was in or what her medical condition was at the time. But, my opinion is, is that she was conscious and brought her vehicle back onto the road. She had blacked out just prior to and the noise of the road or the feel of the road or the sound of the impact, the feel of the impact with Mr. Matty caused her to wake back up, that she was able to bring her vehicle back onto the roadway.

(03/26/10 Wicker Dep. 19:11-19.)

## II.  **The Pertinent Policy Language**

Ms. Griffin was insured under State Auto Policy No. AGA 5041615 (the "Policy"). (Ex. A to Compl., Certified Copy of State Auto Policy No. AGA 5041615 [hereinafter Policy].) The Declarations page of the Policy provides "COVERAGE" for "LIABILITY-BODILY INJURY & PROPERTY DAMAGE" with "LIMITS OF LIABILITY" of "$100,000 EACH ACCIDENT." (Policy at 1.)[2] The Policy also provides, in part, that

> The limit of liability shown in the Schedule or in the Declarations for Liability Coverage is [State Auto's] maximum limit of liability for all damages resulting from any one auto accident. This is the most [State Auto] will pay regardless of the number of:
> 1.   "Insureds";
> 2.   Claims made;
> 3.   Vehicles or premiums shown in the Declarations; or
> 4.   Vehicles involved in the auto accident.

---

[2]Because the Policy contains non-consecutive pagination, the Court refers to the Policy's pages sequentially without regard to the document's printed page numbers.

(*Id.* at 22.) The Policy does not define "accident," "each accident," "any one auto accident," or "the auto accident."

DISCUSSION

In response to the Court's certified question, the Supreme Court of Georgia adopted the cause theory to aid Georgia courts in the construction of the word "accident" where "accident" is not specifically defined in an automobile liability insurance policy.[3] Under the cause theory, "the number of accidents is determined by the number of causes of the injuries, with the court asking if [t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." *State Auto Prop. & Cas. Co. v. Matty*, 286 Ga. 611, 613, 690 S.E.2d 614, 617 (2010) (alteration in original) (internal quotation marks omitted). Specifically,

> In the context of vehicle accidents involving multiple collisions that do not occur simultaneously (recognizing that it is almost impossible that such collisions can occur without any difference in time and place), courts look to whether, after the cause of the initial collision, the driver regained control of the vehicle before a subsequent collision, so that it can be said there was a second intervening cause and therefore a second accident.

*Id.* at 614, 690 S.E.2d at 617.

---

[3]The law of Georgia governs the substantive issues in this action, which is before the Court based upon diversity jurisdiction. *SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1214 (11th Cir. 1999).

7

The issue in this case is therefore whether Ms. Griffin regained control over her vehicle after the first impact supporting a finding that a second intervening cause preceded a second accident. Here, there is evidence that Ms. Griffin blacked out right before the first impact and that only one second elapsed between the first impact with Mr. Matty's bicycle and the second impact with Mr. Davis's bicycle. However, there is also evidence that, within the one second between impacts, Ms. Griffin regained consciousness and made a steering input to bring the vehicle back onto the roadway, and that but for this correction, the second impact with Mr. Davis's bicycle would not have occurred. Therefore, the Court finds that there are genuine issues of material fact as to whether Ms. Griffin regained control over her vehicle after the first collision such that a reasonable jury could conclude that there was a second intervening cause and therefore a second accident. Accordingly, the motions for summary judgment are denied.

IT IS SO ORDERED, this 14th day of June, 2010.

                                                S/Clay D. Land
                                                  CLAY D. LAND
                                      UNITED STATES DISTRICT JUDGE